**Electronically Filed
Intermediate Court of Appeals
29210
07-JUL-2011
02:32 PM**

NO. 29210

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CFI, INC., A Hawai'i Corporation, Plaintiff-Appellant,
v.
HAMAKUA COAST REALTY, INC., a Hawai'i Corporation,
and DENIS FERRARI, Defendants-Appellees,
and
ERNEST B. TEXEIRA, and ALA KAI REALTY, INC.,
a Hawai'i Corporation,
Defendants/Third-Party Plaintiffs-Appellees,
and
TEX, INC., a Hawai'i Corporation, et al., Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 06-1-0380)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Reifurth and Ginoza, JJ.)

Plaintiff-Appellant CFI, Inc. (CFI or Buyer), the buyer of undeveloped real property, sued its real estate agents, the seller, and the seller's real estate agents. The Circuit Court of the Third Circuit (Circuit Court)[1] granted summary judgment in favor of CFI's agents and the seller's agents. On appeal, CFI argues that the Circuit Court erred in these grants of summary judgment. We agree.

CFI's predecessors in interest, Third-Party Defendant Donald J. Cook (Cook) and Third-Party Defendant Daniel J. Ferrari (Daniel), negotiated the purchase from Defendant Tex, Inc. (Tex or Seller) of a 14.049-acre parcel of undeveloped real property

---

[1] The Honorable Elizabeth A. Strance presided over the proceedings relevant to this appeal.

located in Hāmākua on the Island of Hawai'i (Hāmākua Property or the Property). The Hāmākua Property was listed for sale as property that could be developed into a 40-lot subdivision.

Defendants/Third-Party Plaintiffs-Appellees Ernest B. Texeira (Texeira) and Ala Kai Realty, Inc. (Ala Kai) (collectively, "Seller's Agents") were the real estate agents representing Tex. Defendants-Appellees Hamakua Coast Realty, Inc. (HCR) and Denis Ferrari (Denis)[2/] (collectively, "CFI's Agents") were the real estate agents representing Cook and Daniel, and later CFI.

CFI asserted claims against CFI's Agents and Seller's Agents based on the allegation that prior to CFI's purchase of the Hāmākua Property, CFI's Agents and Seller's Agents failed to disclose an encroachment and setback violation by a structure on an adjoining property which was material to CFI's decision to purchase. The Circuit Court granted summary judgment in favor of CFI's Agents and Seller's Agents on the ground that CFI failed to present evidence at the summary judgment hearing that CFI's Agents or Seller's Agents had knowledge of the alleged encroachment and setback violation. However, neither CFI's Agents nor Seller's Agents, as the movants seeking summary judgment, met their initial burden of establishing the absence of a genuine issue of material fact by producing evidence that they had no knowledge of the alleged encroachment and setback violation. Thus, the burden of producing evidence on the factual issue of the knowledge of CFI's Agents or Seller's Agents did not shift to CFI.

We conclude that the Circuit Court erred in basing its grant of summary judgment in favor of CFI's Agents and Seller's Agents on the failure of CFI to respond with affirmative proof that they had knowledge of the alleged encroachment and setback violation. We vacate the judgments entered in favor of

---

[2/]Denis Ferrari is the father of Daniel J. Ferrari.

CFI's Agents and Seller's Agents, and we remand the case for further proceedings.

BACKGROUND

I.

CFI's predecessors in interest, Cook and Daniel, submitted a Deposit Receipt Offer and Acceptance (DROA) to Tex dated July 21, 2004, offering to purchase the Hāmākua Property for $1,450,000. The DROA contained provisions imposing staking, survey, and disclosure obligations on the Seller. Paragraph C-42 of the DROA provided:

> **Survey.** Prior to the Scheduled Closing Date, Seller shall, at Seller's sole cost and expense, have a registered land surveyor (a) stake the Property even if the stakes are visible and, (b) if improvements exist along the Property line, provide Buyer with a map (with surveyor's stamp) and accompanying report to show the perimeters of the Property and the location of any improvements in the vicinity of the perimeter Property lines. This survey and map may not address whether improvements on the Property are in compliance with State and/or County requirements, and/or subdivision covenants, conditions, and restrictions.

Paragraph C-44 of the DROA, which appeared under the heading "**SELLER'S DISCLOSURES** (Required by Hawaii Statute for residential real property)," provided in relevant part:

> **Seller's Obligation to Disclose. Under Hawaii law,** Seller is obligated to fully and accurately disclose in writing to Buyer any fact, defect, or condition, past or present, that would be expected to measurably affect the value of the Property to a reasonable person. Withing 7 days from the Acceptance Date, Seller shall provide Buyer with a written disclosure statement signed and dated by Seller within six (6) months before or ten (10) days after the Acceptance Date. Such Disclosure shall be prepared in good faith and with due care and shall disclose all material facts relating to the Property that: (i) are within the knowledge or control of Seller; (ii) can be observed from visible, accessible areas; or (iii) which are required by Section 508D-15 of the Hawaii Revised Statutes.

Tex accepted Cook and Daniel's offer set forth in the DROA, and escrow was opened with Island Title Corporation. In the meantime, CFI was incorporated, and Cook instructed escrow to allow title to vest in CFI.

3

On August 4, 2004, Texeira (one of Seller's Agents) sent a facsimile transmission to Denis (one of CFI's Agents), which stated:

> Just to let you know that there are no CC&R's[3/] for the subject property. Also, the sellers do not have a disclosure form because they have nothing to disclose. For the survey, my clients are currently in the process of getting a surveyor to put out a new survey of the property. If you have any questions please feel free to call me at . . . and I'll get back to you as soon as possible.

On November 23, 2004, Cook and Daniel signed a "Condition Clearance Supplement to Escrow Instructions," as President and Secretary, respectively, of CFI. This document stated, in relevant part:

> Any and all special and/or standard provisions and conditions of the DROA and any amendments and addenda thereto have been met to our complete satisfaction, including but not limited to provisions relating to staking, survey, termite clearance reports, appliances, plumbing and electrical fixtures/systems, FIRPTA/HARPTA certifications, lease and property disclosures. Escrow is instructed to close without exception.

It also appears that on or about November 28, 2004, a document entitled "Written Notice to Escrow of Satisfaction of Contingency" was signed on CFI's behalf and provided escrow with written notice that the survey contingency set forth in Paragraph C-42 of the DROA had been satisfied.

On or about November 30, 2004, Tex issued a Warranty Deed to CFI, which closed the sale of the Hāmākua Property. The Warranty Deed provided in relevant part that the "Grantor does hereby covenant with the Grantee that the Grantor is lawfully seised in fee simple of said granted premises and that the said premises are free and clear of all encumbrances except as aforesaid, and except for assessments for real property taxes." The Warranty Deed did not identify the alleged encroachment and setback violation by the adjoining land owner as an encumbrance.

---

[3/] "CC&R" apparently refers to "Covenants, Conditions, and Restrictions."

II.

On November 29, 2006, CFI filed a complaint in the Circuit Court against Seller, Seller's Agents, and CFI's Agents (collectively, "Defendants"). CFI alleged that Defendants failed to disclose to CFI that a structure under construction on a neighboring property was on the boundary of and encroaching upon the Hāmākua Property. The neighboring property is owned by Third-Party Defendant First Assembly of King's Cathedral and Chapels (First Assembly).

CFI claimed that because of the alleged encroachment and setback violation, it "[w]ill be unable to build on certain lots of the 40 lot subdivision" and "may be forced to redraw the 40 lot subdivision plat . . . and start over the subdivision process with a lesser number of lots for subdivision." According to CFI, it did not learn of the alleged encroachment and setback violation by First Assembly until about December 4, 2004, after the sale had closed. CFI also asserted that it made two requests for a boundary survey to Tex after closing; that the survey was completed around June 9, 2005; and that CFI received the survey report in late July 2005. A survey map attached as Exhibit E to the complaint showed that there was a structure labeled "House" on First Assembly's property that touches or is "0.0 Clear" of the boundary line.

CFI's complaint alleged claims of actual and/or constructive fraud (Count 1) and negligence (Count 2) against Seller's Agents; negligence (Count 5) against CFI's Agents; and fraudulent, negligent, or innocent misrepresentation (Count 4) against both Seller's Agents and CFI's Agents. The complaint asserted that Seller's Agents and CFI's Agents owed a duty to CFI to exercise reasonable care; that they knew or should have known of the alleged encroachment and setback violation; and that they were obligated to disclose the encroachment and setback violation to CFI because they knew it was material to CFI's decision to purchase the Hāmākua Property. The complaint also alleged claims of actual and/or constructive fraud (Count 1); negligence (Count

5

2); breach of contract and express and implied warranties (Count 3); and fraudulent, negligent, or innocent misrepresentation (Count 4) against Tex.

III.

Numerous cross-claims and a third-party complaint were filed in response to CFI's complaint. The Seller's Agents filed cross-claims against Tex and CFI's Agents and a Third-Party Complaint against Cook, Daniel, and First Assembly; CFI's Agents filed cross-claims against Tex, Seller's Agents, and First Assembly; Daniel filed a cross-claim against Cook and CFI; and Tex filed a cross-claim against First Assembly.

A.

On September 7, 2007, Tex filed a motion for partial summary judgment against CFI (Tex's MSJ). In this motion, Tex argued that it was entitled to summary judgment on CFI's complaint because: 1) under the doctrine of merger, any of CFI's rights contained in the DROA were extinguished upon CFI's acceptance of the Warranty Deed; 2) there was no breach of the Warranty Deed because there was no encroachment under Hawaii Revised Statutes (HRS) §§ 669-11[4] and 669-12,[5] as First

---

[4] HRS § 669-11 (Supp. 2010) provides:

For the purposes of this part, "de minimis structure position discrepancy" means:

(1)     For commercial property, industrial property, and multi-unit residential property, 0.25 feet;

(2)     For all other residential property, 0.5 feet;

(3)     For agricultural and rural property, 0.75 feet; and

(4)     For conservation property, 1.5 feet;

between the location of an improvement legally constructed along what was reasonably believed to be the boundary line and the actual location of the boundary line based on the most recent survey.

[5] HRS § 669-12 (Supp. 2010) provides in pertinent part:

(1)     A de minimis structure position discrepancy shall not be considered an encroachment or a basis for a zoning
(continued...)

6

Assembly's building, being on the property line, was a de minimis structure position discrepancy; 3) assuming that CFI had the right to enforce the DROA, CFI could not make any claim based on the DROA because CFI acknowledged "complete satisfaction" of all the provisions and conditions of the DROA, including the survey requirement; and 4) CFI was not entitled to disclosures under Paragraph C-44 of the DROA because HRS § 508D-4[5/] only requires

---

[5/] (...continued)
    violation;

    . . .

    (4)    Liability for any claims for injuries or damages to persons or property arising out of, or in connection with, an improvement within a de minimis structure position discrepancy shall be borne by the property owner who constructed the improvement or the property owner's successor in interest[.]

[6/] HRS § 508D-4 (2006) provides, in pertinent part, that

    no seller may sell residential real property unless:

    (1)    Prior to the sale of such residential real property, a disclosure statement is:

        (A)    Signed and dated by the seller within six months before or ten calendar days after the acceptance of a real estate purchase contract by the buyer; and

        (B)    Delivered to the buyer as provided in section 508D-5[.]

At the time relevant to this case, HRS § 508D-1 (Supp. 2004) defined the terms "disclosure statement" and "residential real property" as follows:

    "Disclosure statement" means a written statement prepared by the seller or at the seller's direction, that purports to fully and accurately disclose all material facts relating to the residential real property being offered for sale that:

        (1)    Are within the knowledge or control of the seller;

        (2)    Can be observed from visible, accessible areas; or

        (3)    Are required to be disclosed under sections 508D-15 and 508D-4.5.

    Except for the disclosures required under section 508D-15, no seller shall have any duty to examine any public records when preparing a disclosure statement.

        . . . .

(continued...)

7

disclosures for residential real property and the Hāmākua Property did not qualify as residential real property because it was undeveloped property containing no residential structures.

B.

On September 20, 2007, CFI's Agents filed a substantive joinder in Tex's MSJ. In their joinder, CFI's Agents incorporated Tex's MSJ in its entirety and specifically argued that they were entitled to summary judgment because: 1) the alleged setback violation did not constitute an encroachment under HRS §§ 669-11 and 669-12; and 2) CFI waived its right to pre-closing staking, survey, and property disclosures under the DROA by signing the Condition Clearance Supplement to Escrow Instructions.

C.

On September 24, 2007, Seller's Agents filed a motion for partial summary judgment against CFI (Seller's Agents' MSJ) In their motion, Seller's Agents argued that they were entitled to summary judgment because: 1) under the doctrine of merger, CFI's rights under the DROA were extinguished upon CFI's acceptance of the Warranty Deed; 2) based on HRS §§ 669-11 and 669-12, First Assembly's building was on the property line and this did not constitute an encumbrance under the Warranty Deed; 3) CFI acknowledged complete satisfaction of the provisions and conditions of the DROA through the Condition Clearance Supplement to Escrow Instructions and Written Notice to Escrow of Satisfaction of Contingency; and 4) CFI was not entitled to disclosures under Paragraph C-44 of the DROA because the disclosures required by HRS § 508D-4 only apply to residential real property and the Hāmākua Property was "vacant land."

---

[6]/(...continued)
"Residential real property" means fee simple or leasehold real property on which currently is situated:

(1)    From one to four dwelling units; or

(2)    A residential condominium or cooperative apartment, the primary use of which is occupancy as a residence.

D.

On November 19, 2007, CFI filed a memorandum in opposition to Tex's MSJ and the Seller's Agents' MSJ.  In its memorandum in opposition, CFI argued that factual disputes existed as to the claims raised in its complaint which precluded summary judgment.  CFI also argued that the Circuit Court should decline to rule on Defendants' motions for summary judgment to enable CFI to conduct further discovery.  CFI claimed that the parties had not done extensive discovery because the case had been accepted into the Court Annexed Arbitration Program.  In addition, CFI addressed the Defendants' legal arguments and argued that case law from Hawai'i and other jurisdictions supported the various tort and contract theories on which its complaint was based.

E.

On November 29, 2007, the Circuit Court held a hearing on Tex's MSJ, CFI's Agents' substantive joinder in Tex's MSJ, and the Seller's Agents' MSJ.  At the hearing, CFI's Agents and Seller's Agents argued for the first time that CFI had failed to present evidence that they had knowledge of the alleged encroachment and setback violation prior to closing.  CFI's Agents asserted that there was no evidence to show that they "were aware of any so-called alleged encroachment of the property."  Sellers' Agents argued that "based on the facts presented to the Court, it's obvious and it is crystal clear that there was no way for anyone from Ala Kai Realty to have known that there was this potential alleged encroachment[.]"[2/]  The Circuit Court asked CFI what evidence it had that Seller's Agents or CFI's Agents knew of the alleged encroachment at the time of closing.  CFI responded that the "sellers' side" said that there was nothing to disclose.

---

[2/] The quoted statement was made by counsel for Ala Kai, and Texiera was employed by Ala Kai.  At the hearing, counsel for Texiera stated his concurrence with the arguments made by Ala Kai.

At the November 29, 2007, hearing, the Circuit Court announced that it would grant CFI's Agents' substantive joinder in Tex's MSJ and Seller's Agents' MSJ. The Circuit Court found that there was "no genuine material issue of fact" regarding whether CFI's Agents and Seller's Agents "knew at the time of closing that there was a structure on the property line or in the setback." The Circuit Court took Tex's MSJ under advisement.

F.

On January 14, 2008, CFI filed a motion to reconsider the Circuit Court's granting of summary judgment in favor of CFI's Agents and Seller's Agents (Motion for Reconsideration). As part of the Motion for Reconsideration, CFI submitted the affidavit of Cook, which asserted that: (1) prior to signing the "waiver declaration" for the staking and survey conditions of the DROA and proceeding with closing, Cook asked Denis, his agent, "if all looked okay" and "if nothing was apparently wrong from the position of the properly line stakes"; (2) Denis "said all was well" and advised Cook to sign the "release waiver" and proceed with closing; (3) Cook would not have signed the waiver but for the advice of Denis; (4) Cook also signed the waiver in reliance on the "nothing to disclose" fax from Texeira, who was Tex's agent; (5) upon viewing the Hāmākua Property four days after closing, it was clear to Cook that First Assembly's building was "too close to the property line"; and (5) Tex is a trust set up by Texeira's grandfather and Texeira's father was involved in staking the Hāmākua Property.

On January 22, 2008, the Circuit Court filed an order granting CFI's Agents' substantive joinder in Tex's MSJ and entering summary judgment in favor of CFI's Agents on all claims in CFI's complaint. On February 28, 2008, the Circuit Court filed an order granting Seller's Agents' MSJ and entering summary judgment in favor of Seller's Agents on all claims in CFI's complaint.

On March 13, 2008, the Circuit Court filed an order denying CFI's Motion for Reconsideration. The Circuit Court did not address the merits of the Motion for Reconsideration but denied the motion because it was filed on January 14, 2008, before the Circuit Court had issued its final written order granting Seller's Agents' MSJ.[8] On May 22, 2008, the Circuit Court filed separate Judgments in favor of CFI's Agents and Seller's Agents and against CFI, with respect to all claims asserted in CFI's complaint against CFI's Agents and Seller's Agents. The Circuit Court certified that there was no just reason for delay in entering the Judgments.[9]

DISCUSSION

On appeal, CFI asserts that the Circuit Court erred in granting summary judgment in favor of CFI's Agents and Seller's Agents because disputed issues of material fact exist which preclude summary judgment. We conclude that the Circuit Court erred in granting summary judgment in favor of CFI's Agents and Seller's Agents.

In analyzing the allocation of the burdens borne by the parties in a motion for summary judgment, the Hawai'i Supreme Court has concluded:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed

---

[8] Although the Circuit Court did not refer to its final order entering summary judgement in favor of CFI's Agents, its rationale for denying the Motion for Reconsideration was also applicable to that order.

[9] As for Tex, the Circuit Court issued separate summary judgment orders in favor of Tex as well as judgments in favor of Tex and against CFI on all claims in CFI's complaint and awarding attorney's fees to Tex. CFI has filed a separate appeal from these judgments, and briefing in that appeal is still ongoing.

11

> facts, it is entitled to summary judgment as a matter of law. <u>Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts</u>, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part[y] is entitled to summary judgment as a matter of law.

<u>French v. Hawaii Pizza Hut, Inc.</u>, 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004) (some emphasis in original omitted) (quoting <u>GECC Fin. Corp. v. Jaffarian</u>, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995)).

I.

In its complaint, CFI asserted claims for negligence (Count V) and misrepresentation (Count IV) against CFI's Agents. The crux of CFI's complaint against CFI's Agents was that they had breached their duty to disclose the existence of the alleged encroachment and setback violation, caused by First Assembly's building being on the boundary line, because this circumstance was material to CFI's decision to purchase the Hāmākua Property. In its complaint, CFI alleged that CFI's Agents knew or should have known about the alleged encroachment and setback violation.

In Hawai'i, "[t]he rules of agency apply to the relationship between a real estate broker and principal. The law imposes upon a real estate broker a fiduciary obligation comprised of utmost good faith, integrity, honesty, and loyalty, as well as a duty of due care and diligence." <u>Property House, Inc. v. Kelley</u>, 68 Haw. 371, 377, 715 P.2d 805, 810 (1986) (citations omitted). Further,

> a real estate agent bears a duty to make a full, fair, and timely disclosure to the principal of all facts within the agent's knowledge which are, or may be, material to the transaction and which might affect the principal's rights and interests or influence his actions. "Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his [or her] principal information which is

12

> relevant to affairs entrusted to him [or her] and which, as
> the agent has notice, the principal would desire to have.

Id. (citations and ellipsis points omitted).

CFI's Agents did not file a separate motion for summary judgment against CFI, but filed a motion for substantive joinder in Tex's MSJ. Tex, however, was the seller in the transaction, and Tex's arguments were directed at establishing that it had not breached its obligations as the seller under the DROA or the Warranty Deed and that First Assembly's structure did not constitute an encroachment or an encumbrance under the Warranty Deed. While incorporating all of Tex's MSJ, CFI's Agents in their substantive joinder focused on Tex's arguments that: (1) the alleged encroachment and setback violation by the First Assembly structure was de minimis and did not constitute an encroachment under HRS §§ 669-11 and 669-12; and (2) by signing the Condition Clearance Supplement to Escrow Instructions, CFI waived its right to the pre-closing staking, survey, and disclosure requirements of the DROA.

Significantly, in their moving papers, CFI's Agents did not allege, much less present affidavits establishing, that they had no knowledge of the alleged encroachment and setback violation. Indeed, the first time that CFI's Agents raised the issue was at the hearing on the summary judgment motions when they argued that there was no evidence to show that they "were aware of any so-called alleged encroachment of the property."

The Circuit Court granted summary judgment in favor of CFI's Agents on the ground that there was no genuine issue of material fact as to whether CFI's Agents knew at the time of closing "that there was a structure on the property line or in the setback." Our review of the record establishes that the Circuit Court based its decision on CFI's failure to present evidence at the summary judgment hearing that CFI's Agents had knowledge of the alleged encroachment and setback violation prior to closing. However, CFI's Agents did not meet their initial burden as the party moving for summary judgment of producing

13

evidence that they had no knowledge of the alleged encroachment and setback violation. As noted, CFI's Agents did not present evidence or even raise the issue of their lack of knowledge in their moving papers. Because CFI's Agents did not meet their initial burden of producing evidence that no genuine issue of material fact existed as to their lack of knowledge, the burden did not shift to CFI to respond by producing specific evidence demonstrating that CFI's Agents had knowledge of the encroachment and setback violation, as CFI alleged in the complaint. See French, 105 Hawai'i at 470-73, 99 P.3d at 1054-57. Accordingly, it was error for the Circuit Court: (1) to find that there was no genuine issue of material fact that CFI's Agents lacked knowledge of the alleged encroachment and setback violation based on CFI's failure to present affirmative proof of such knowledge; and (2) to grant summary judgment to CFI's Agents on that basis.

CFI's complaint asserted tort claims of negligence and misrepresentation against CFI's Agents. CFI's Agents' joinder in Tex's MSJ did not directly address or resolve CFI's tort claims against CFI's Agents. Whether First Assembly's building constituted an encroachment or encumbrance under the law would not resolve these tort claims. CFI claimed that CFI's Agents' failure to disclose that First Assembly's building was on the property line, regardless of whether this constituted an encroachment or encumbrance, was a breach of the duties owed by CFI's Agents to CFI because this condition was material to CFI's decision to purchase. See Property House, 68 Haw. at 377, 715 P.2d at 810.[10/] In addition, CFI's purported waiver of its right under the DROA to enforce Tex's staking, surveying, and disclosure obligations would not resolve CFI's tort claims

---

[10/] The record indicates that First Assembly's building was within the twenty-foot side yard setback required for First Assembly's property. In its complaint, CFI asserted that because of the alleged setback violation by First Assembly, CFI would not be able to "build on certain lots" within the Hāmākua Property, and that disclosure of the alleged setback violation would have affected its decisions to purchase the Hāmākua Property and to incur expenses associated with the property.

against CFI's Agents, which were not based on the DROA, but on CFI's Agents' breach of their duties as CFI's real estate agents. The same holds true with respect to CFI's Agents' joinder in the other arguments raised by Tex in its summary judgment motion, which were directed at establishing that Tex had not breached the DROA or the Warranty Deed.

We conclude that the Circuit Court erred in basing its grant of summary judgment in favor of CFI's Agents on its finding that there was no genuine issue of material facts regarding their lack of knowledge of the alleged encroachment and setback violation. We also conclude that the arguments presented in CFI's Agents' substantive joinder in Tex's MSJ did not establish that CFI's Agents are entitled to summary judgment on CFI's negligence and misrepresentation claims. Accordingly, we vacate the Circuit Court's grant of summary judgment in favor of CFI's Agents.

## II.

In its complaint, CFI alleged that Seller's Agents were liable to CFI for fraud, negligence, and misrepresentation. These claims were based on CFI's allegations that Seller's Agents failed to disclose the existence of the alleged encroachment and setback violation and engaged in misrepresentation by stating that there was nothing to disclose about the Hāmākua Property.

In this regard, we note that the Hawai'i Supreme Court has recognized the tort of negligent misrepresentation as set forth in Section 552 of the Restatement (Second) of Torts (1977).[11/] Chun v. Park, 51 Haw. 501, 467-68, 462 P.2d 905, 908-

---

[11/] Section 552 of the Restatement (Second) of Torts provides in pertinent part:

§ 552. Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon

(continued...)

09 (1969) (adopting the tentative draft of Section 552, which later was incorporated in the Restatement (Second) of Torts); State ex rel. Bronster v. United States Steel Corp., 82 Hawai'i 32, 41, 919 P.2d 294, 303 (1996). In Shaffer v. Earl Thacker Co., Ltd., 6 Haw. App. 188, 716 P.2d 163 (1986), this court held that this tort applied in a suit by a buyer of residential property against the seller's brokers. The buyer claimed that prior to his entering into the DROA, the seller's brokers had misrepresented the boundary line, the absence of encroachments, and the square footage of the property. Id. at 189-90, 716 P.2d at 163-64. This court concluded:

> The tort of negligent misrepresentation was recognized by the Hawaii Supreme Court in Chun v. Park, 51 Haw. [501], 462 P.2d 905 (1969) (title company retained by seller owes to buyer a duty of reasonable care in conducting and preparing a title search despite a lack of privity). We know of no valid reason why this tort should not apply to real estate brokers representing the sellers of residential real property.

Id. at 192, 716 P.2d at 166.

The Circuit Court granted summary judgment in favor of Seller's Agents on the basis that there was no genuine issue of material fact that Seller's Agents had no knowledge of the alleged encroachment and setback violation at the time of closing. The Circuit Court's grant of summary judgment on this basis was erroneous for the same reasons we previously discussed regarding CFI's Agents.

Like CFI's Agents, Seller's Agents did not raise the issue of their lack of knowledge of the alleged encroachment or setback violation, or meet their initial burden of producing evidence on this issue, in their moving papers. Instead, Seller's Agents argued that they were entitled to summary judgment because: 1) under the doctrine of merger, CFI's rights under the DROA were extinguished upon CFI's acceptance of the

---

11/ (...continued)
the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Warranty Deed; 2) based on HRS §§ 669-11 and 669-12, First Assembly's building was on the property line and this did not constitute an encumbrance under the Warranty Deed; 3) CFI acknowledged complete satisfaction of the provisions and conditions of the DROA through the Condition Clearance Supplement to Escrow Instructions and Written Notice to Escrow of Satisfaction of Contingency; and 4) CFI was not entitled to disclosures under Paragraph C-44 of the DROA because the disclosures required by HRS § 508D-4 only apply to residential real property and the Hāmākua Property was "vacant land." The first time that Seller's Agents argued the issue of their lack of knowledge was at the hearing on the motions for summary judgment. Thus, the Circuit Court erred in shifting the burden to CFI to produce specific evidence of Seller's Agents' knowledge of the alleged encroachment and setback violation and in ruling against CFI based on its failure to produce such evidence. See French, 105 Hawai'i at 470-73, 99 P.3d at 1054-57.[12/]

We further conclude that the arguments presented in Seller's Agents' MSJ did not establish that Seller's Agents are entitled to summary judgment on CFI's claims. Those arguments were directed at whether there had been a breach of the DROA and not on whether Seller's Agents owed tort duties to CFI that had been breached. Accordingly, we vacate the Circuit Court's grant of summary judgment in favor of Seller's Agents.

We note that on appeal, Ala Kai cites to the declaration filed by Daniel on February 5, 2008. Daniel and Cook were CFI's predecessors in interest in the purchase of the Hāmākua Property. In his declaration, Daniel asserts that he and Cook knew about the problem of the alleged encroachment and setback violation before escrow closed on the sale of the Hāmākua Property. Ala Kai contends that based on Daniel's declaration,

---

[12/] Seller's Agents' arguments on appeal are premised on the correctness of the Circuit Court's finding that there was no genuine issue of material fact that Seller's Agents lacked knowledge of the alleged encroachment and setback violation before closing.

"there is no dispute" that the officers of CFI[13] knew about the alleged encroachment and setback violation before closing. Daniel's declaration was filed by Tex in support of Tex's motion to have the Circuit Court amend or reconsider the court's finding, issued in ruling on Tex's MSJ, that CFI "learned of [First Assembly's] abutting structure after closing. . . ." However, this declaration as well as Daniel's supplemental declaration, which contained similar assertions as the first declaration, were both filed <u>after</u> the Circuit Court had issued its order granting Seller's Agents' MSJ. Therefore, Daniel's declarations were not considered by the Circuit Court in granting summary judgment in favor of Seller's Agents. <u>See</u> <u>Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co.</u>, 100 Hawaiʻi 97, 108, 58 P.3d 608, 619 (2002) ("When reviewing a summary judgment, an appellate court's consideration of the record is limited to those materials that were considered by the trial court in ruling on the motion.") Moreover, Cook filed a declaration disputing the assertions made in Daniel's first declaration, and the Circuit Court did not grant Tex's motion to amend or reconsider the Circuit Court's finding that CFI learned of First Assembly's abutting structure after closing. Under these circumstances, we cannot accept Ala Kai's argument that there is no dispute that CFI's officers knew of the alleged encroachment and setback violation before closing.

III.

In vacating the Circuit Court's grant of summary judgment in favor of CFI's Agents and Seller's Agents, we express no view on whether CFI's Agents or Seller's Agents may be able to demonstrate their entitlement to summary judgment on a more fully developed record. We also do not consider whether CFI's Agents or Seller's Agents may be entitled to summary judgment based on arguments that were not raised in the Circuit Court or on appeal.

---

[13] Ala Kai identifies Daniel as the Secretary of CFI and Cook as the President of CFI.

CONCLUSION

We vacate (1) the May 22, 2008, Judgment entered by the Circuit Court in favor of CFI's Agents and (2) the May 22, 2008, Judgment entered by the Circuit Court in favor of Seller's Agents, and we remand the case for further proceedings consistent with this Memorandum Opinion.

DATED:  Honolulu, Hawaiʻi, July 7, 2011.

On the briefs:

Douglas L. Halsted
for Plaintiff-Appellant

Sidney K. Ayabe
Ronald T. Michioka
(Ayabe, Chong, Nishimoto, Sia &
Nakamura, A Limited Liability
Law Partnership)
for Defendants-Appellees

Nelson H. Kinoshita
for Defendant/Third-Party
Plaintiff-Appellee Ernest B. Texeira

Dwayne Stephen Lerma
Jo Anne E. Goya
(Lerma & Goya)
for Defendant/Third-Party
Plaintiff-Appellee Ala Kai Realty,
Inc., a Hawaiʻi Corporation

Christopher J. Roehrig
for Defendant Tex, Inc.

Craig H. Nakamura

Chief Judge

Lawrence M Reifurth

Associate Judge

Lisa M Ginoza

Associate Judge

19